UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRIZ B., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security,[1] <br><br> Defendant. | Case No.: 3:19-cv-00785-AHG <br><br> **ORDER RESOLVING JOINT MOTION FOR JUDICIAL REVIEW** <br><br> [ECF No. 17] |

Plaintiff Beatriz B. ("Plaintiff") filed this action on April 29, 2019, seeking review of the Commissioner of Social Security's ("Commissioner") denial of her application for social security disability and supplemental security income benefits. ECF No. 1. The parties consented to proceed before a Magistrate Judge on May 7, 2019. ECF No. 5. Pursuant to the Court's Order, the parties filed a Joint Motion for Judicial Review on December 9, 2019, stating their positions on the disputed issues in the case. ECF No. 17. The Court has taken the Joint Motion under submission without oral argument.

---

[1] Andrew Saul became the Commissioner of Social Security on June 17, 2019. Although Plaintiff originally brought this action against Former Acting Commissioner Nancy Berryhill, this case may properly proceed against Andrew Saul pursuant to 42 U.S.C. § 405(g).

For the reasons set forth below, the Court **GRANTS** the Joint Motion, **REVERSES** the Commissioner's denial of benefits to Plaintiff, and **REMANDS** for payment of benefits.

I. **BACKGROUND**

Plaintiff was born in 1957. Administrative Record ("AR") at 66. Her past relevant work experience is as a grocery store clerk. AR 43.

On August 11, 2015, Plaintiff filed an application for Social Security Disability Insurance, alleging a disability onset date of August 4, 2015. AR 16. The Commissioner denied Plaintiff's claim on September 22, 2015, and denied Plaintiff's request for reconsideration of the denial on June 2, 2016. AR 16. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 10, 2018. AR 16. Plaintiff was represented by counsel at the hearing, and provided testimony. AR 34–35. A vocational expert also testified. AR 35.

On June 14, 2018, the ALJ issued a decision denying Plaintiff's request for benefits, finding that Plaintiff had not been under a disability within the meaning of the Social Security Act from August 4, 2015, through the date of his decision. AR 16, 27. Plaintiff requested review of the ALJ's decision by the Appeals Council. AR 1–7. When the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008).

II. **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).

Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should

be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676. 679 (9th Cir. 2005)). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.*; *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## III. THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

### A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. *Id.* If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to

determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. *Lounsberry*, 468 F.3d at 1114.

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform her past work. *Id.* An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc. Sec. Ruling ("SSR")[2] 96-9p, 1996 WL 374184, at *1 (1996). It reflects the most a claimant can do despite her limitations. *See Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC must include an individual's functional limitations or restrictions as a result of all of her impairments – even those that are not severe (*see* 20 C.F.R. § 404.1545(a)(1)–(2), (e)) – and must assess her "work-related abilities on a function-by-function basis." SSR 96-9p, 1996 WL 374184, at *1; *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). An ALJ errs when he provides an incomplete RFC ignoring "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161–62 (9th Cir. 2012) (further noting that the error is not harmless when an ALJ fails to discuss significant and probative evidence favorable to a claimant's position because when the RFC is incomplete, the hypothetical question presented to the vocational expert is incomplete and, therefore, the ALJ's reliance on the vocational expert's answers is improper)).

---

[2] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

An RFC assessment is ultimately an administrative finding reserved to the ALJ. 20 C.F.R. § 404.1527(d)(2). However, an RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1545. A court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). If the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled and the claim is denied. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The claimant has the burden of proving that she is unable to perform past relevant work. *Id.* If the claimant meets this burden, a *prima facie* case of disability is established. *Id.*

The ALJ then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c)(1), (c)(2); *see also* 20 C.F.R. § 404.1520(g)(1). The ALJ usually meets this burden either (1) by the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with all of the claimant's physical and mental limitations that are supported by the record, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. *Lounsburry*, 468 F.3d at 1114–15; *Hill*, 698 F.3d at 1162. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; *Tackett*, 180 F.3d at 1099.

**B. The ALJ's Application of the Five-Step Process in This Case**

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since August 4, 2015, the alleged onset date. AR 18. At step two, the ALJ determined that the claimant has two impairments—(1) cervical degenerative disease post fusion surgery, and (2) chronic thoracolumbar strain and sprain—and that the impairments are severe. AR 18.

At step three, the ALJ determined that Plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. AR 22. The ALJ further determined that Plaintiff has the RFC to perform light work as defined in 20 CFR § 404.1567(b), "except with these additional limitations: occasional climbing ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; can never climb ladders, ropes, or scaffolds; cannot perform work at unprotected heights; can have no more than frequent exposure to moving machinery, extreme heat, extreme cold, and vibrations; and can only frequently reach overhead with her upper left extremity." AR 22.

At step four, based on Plaintiff's RFC and the testimony of the vocational expert, the ALJ concluded that Plaintiff is able to perform her past relevant work as a Fast Food Manager, DOT #185.137-010, light, SVP 5, skilled; and a Customer Service Clerk, Retail, DOT #299.367-010, light, SVP 4, semi-skilled. AR 26. Accordingly, the ALJ determined that Plaintiff was not disabled at any time from the alleged onset date of August 4, 2015, through June 14, 2018, the date of the decision. AR 27.

**C. The ALJ's Rejection of Dr. Dodge's Opinion**

Plaintiff argues that the ALJ erred when he gave "little weight" to the opinion of her treating physician, Dr. Larry D. Dodge, in determining Plaintiff's RFC. The ALJ's decision provides the following analysis of Dr. Dodge's opinion:

> In January 2018, Larry Dodge, M.D., one of the claimant's treating physicians, opined that the claimant is unable to lift more than 10-15 pounds, she is unable to work overhead, and she has limited ability to push and pull. (Ex. 21F at 1). Dr. Dodge's opinion is given little weight because the medical evidence does not support this level of restriction. The claimant's neck pain improved with treatment and she retains the ability to perform a wide variety of daily activities.

AR 25.

Plaintiff argues that Dr. Dodge's opinion should have been given substantial weight, since he had treated Plaintiff since at least 2002. Dr. Dodge's treatment records between

September 2013 and January 2018 describe consistent pain and spasm in Plaintiff's neck, radiating through her extremities. ECF No. 17 at 4–6 (citing AR 375–88, 477–78, 480–81, 483, 486, 491–94, 496–97, 500–02, 504–05, 532). These records show that Plaintiff was treated with pain medication and multiple trigger point injections, both of which reduced her pain. ECF No. 17 at 4–6. Plaintiff informed Dr. Dodge at a November 2015 visit that she had stopped working because her pain "was much too intense." ECF No. 17 at 6 (citing AR 532). In February 2016, Dr. Dodge noted that Plaintiff's pain was "dramatically worse, and his examination showed tenderness, spasm, and weakness in her upper extremities. ECF No. 17 at 6 (citing AR 816, 818). During subsequent examinations, Dr. Dodge observed that Plaintiff's symptoms had worsened, with Plaintiff holding her neck awkwardly due to spasm. ECF No. 17 at 6 (citing AR 798–99). In January 2018, Dr. Dodge provided the following opinion:

> As a result of the serious cervical spine injury, [Plaintiff] has been left with chronic neck and radicular arm pain. In addition, she has developed adhesive capsulitis and restricted mobility of the shoulders because of the weakness of the upper extremities. [Plaintiff] is currently impacted on a daily basis and her activities remain limited. She currently is unable to lift more than 10-15 pounds, unable to work overhead, and has limited ability to push or pull.

AR 829.

Plaintiff argues that the ALJ's decision is insufficient as a matter of law, because the ALJ failed to state specific and legitimate reasons for rejecting Dr. Dodge's opinion. Plaintiff further contends there is not substantial evidence in the record to support the three conclusory reasons that the ALJ gave for his rejection: (1) the medical evidence does not support the level of restriction in Dr. Dodge's opinion; (2) Plaintiff's neck pain improved with treatment; and (3) Plaintiff retained the ability to perform a wide variety of daily activities. ECF No. 17 at 9–11.

The Commissioner does not squarely address Plaintiff's argument that the ALJ failed in the first instance to provide more than conclusory reasons for rejecting Dr. Dodge's opinion. Instead, the Commissioner argues that the record as a whole supports

the ALJ's conclusions, pointing generally to four pages of the ALJ's decision that precede his rejection of Dr. Dodge's opinion. *Id.* at 14 (citing AR 22–26). *But see Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). The Commissioner argues that Dr. Dodge's opinion was contradicted by the other medical opinions and Dr. Dodge's own clinical analysis that Plaintiff's pain could be managed successfully through treatments. The Commissioner also argues that the ALJ properly considered Plaintiff's daily activities in rejecting Dr. Dodge's opinion.

**IV.   ANALYSIS**

   **A. Treating Physician Opinions**

A treating physician's opinion is entitled to special weight because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the plaintiff's] case record." 20 C.F.R. § 404.1527(c)(2). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Baxter v. Sullivan*, 923 F.3d 1391, 1396 (9th Cir. 1991)). Where the treating physician's opinion is controverted by another physician, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on substantial evidence in the record. *See Magallanes*, 881 F.2d at 751; *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). To meet this burden, an ALJ must provide "a detailed and thorough summary of the facts

and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Magallanes*, 881 F.2d at 751).

### B. The ALJ Failed to State Specific and Legitimate Reasons for Rejecting Dr. Dodge's Opinion

In evaluating the record, a court makes a distinction based on a physician's relationship with a claimant. *Garrison*, 759 F.3d at 1012. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* (quoting *Lester*, 81 F.3d at 830). In turn, "the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison*, 759 F.3d at 1012. Here, the ALJ did not follow this general rule. Instead, he gave substantial weight to the opinions of Dr. Thomas Sabourin, a doctor who examined Plaintiff but did not treat her; and Drs. S. Lee and A. Alston, doctors who neither examined nor treated Plaintiff, and rejected the opinions of Dr. Dodge and Plaintiff's other treating physician, Dr. Laurence Saben.[3] AR 24–25.

As discussed below, the Court agrees with Plaintiff that the ALJ failed to meet his burden to articulate specific and legitimate reasons to support his rejection of Dr. Dodge's opinion. The ALJ based his rejection of Dr. Dodge's opinion on three conclusory statements, none of which is supported by substantial evidence.

#### 1. The Medical Evidence in the Record Supports Dr. Dodge's Opinion.

The ALJ concluded that Dr. Dodge's opinion should be given "little weight because the medical evidence does not support this level of restriction." AR 25. To assess this conclusion, the Court summarizes the medical evidence in the record.

Dr. Sabourin conducted a consultative orthopedic examination of Plaintiff in January 2018. AR 552–68. Following his examination, Dr. Sabourin opined as follows:

---

[3] Plaintiff does not argue that the ALJ erred by rejecting Dr. Saben's opinion.

> Given the nature of her problems, I feel that she does have significant limitation. She could only lift or carry 20 pounds occasionally and 10 pounds frequently. She could stand and walk up to 6 hours of an eight-hour workday and sit for 6 hours of an eight-hour workday. Push/pull limitations are equal to lift/carry limitations. She does have some postural limitations. I feel that there are probably some degenerative changes in the thoracolumbar area, although x-rays are not available. She seems stiff and it appears to be legitimately so. For this reason, since most people over 58 will have some x-ray changes, I feel that she does have some postural limitations in that she could climb, stoop, kneel, and crouch only frequently.

AR 557. Dr. Sabourin's opinion is not significantly different from Dr. Dodge's opinion. The primary difference is the amount of weight each doctor opined Plaintiff can lift: Dr. Dodge opined that Plaintiff cannot lift more than 10–15 pounds. AR 829. Dr. Sabourin opined that Plaintiff can lift or carry 20 pounds occasionally. AR 557. Dr. Sabourin's opinion does not directly contradict Dr. Dodge's opinion that Plaintiff cannot work overhead.

The opinions of the state agency medical consultants, who neither treated nor examined Plaintiff, are also not substantially different from Dr. Dodge's opinion. AR 66–77, 79–92. Consistent with Dr. Dodge, they determined that Plaintiff is unable to reach overhead. AR 75, 90. They also found that Plaintiff had postural and manipulative limitations. AR 74–75, 89–90. Like Dr. Sabourin, the primary difference from Dr. Dodge is that they opined that Plaintiff could lift, carry, push, or pull 20 pounds occasionally. AR 74, 89.

Dr. Saben began treating Plaintiff for depression in August 2015. AR 831. Dr. Saben opined in February 2018 that Plaintiff "has been unable to work all these years due to her complicated medical and psychiatric issues." AR 831. Although this opinion is conclusory, it does not contradict Dr. Dodge's separate findings regarding Plaintiff's inability to work.

Having reviewed each medical opinion in the record, the Court finds that the ALJ's conclusion that "the medical evidence does not support" the level of restriction in Dr. Dodge's opinion, AR 25, is not supported by specific and legitimate reasons that are

based on substantial evidence in the record. The opinions consistently recognize significant limitations in Plaintiff's ability to work overhead, and the differences in opinion regarding the amount of weight Plaintiff can lift, carry, push or pull are not significant enough to constitute substantial evidence that would outweigh the opinion of a physician who treated Plaintiff for many years during periods of time when she was both able and unable to work.

## 2. The Record Does Not Support a Conclusion That Plaintiff's Neck Pain Improved With Treatment.

A second conclusion stated by the ALJ to support his rejection of Dr. Dodge's opinion is that Plaintiff's neck pain improved with treatment. The ALJ does not cite to specific evidence in the record to support this conclusion, although the Court can glean from other parts of the ALJ's decision the portions of the record that the ALJ likely relied on. The ALJ opined—and the Commissioner also argues here—that Plaintiff "'was doing well with simple measures and treatments, such as medication and management'" and that her function had "'dramatically improved' with her medication regimen[,]" which was "again noted to be effective to in reducing her symptoms in December 2015." AR 24 (quoting AR 480–481, 486; citing AR 533); *see also* ECF No. 17 at 16. After noting that in February 2017 and August 2017, Plaintiff "continued to report that medication was helping her neck pain," the ALJ did acknowledge that Plaintiff "reported that her pain medication was not always helping her in October 2017." AR 24 (citing AR 716, 735).

The Court agrees that Dr. Dodge's treatment notes in 2015 indicate several times that medication and trigger point injections significantly reduced Plaintiff's pain. AR 478, 480–81. However, in context, these statements were made in analyzing treatment options, including whether surgery should be considered. AR 486 ("[Plaintiff], overall, is doing well with simple measures and treatment such as medication and management. This is certainly the best approach for her condition. It will be a mistake to extend the fusion unless the medications prove to be ineffective in the future."). Moreover, these types of treatments indicate a significant pain issue. *See Juan C.P. v. Saul*, No. ED-CV 19-427-PLA, 2019 WL

6039944, at *8 (C.D. Cal. Nov. 14, 2019) (narcotic pain medications and spinal epidural injections are not "conservative" medical treatments).

The ALJ's myopic focus on pain improvement through the use of medication and injections also ignores ample evidence in the record that Plaintiff's condition deteriorated significantly over time. *See, e.g.*, *Jarrett v. Colvin*, No. C15-5176-BHS-JPD, 2015 WL 9647627, at *4 (W.D. Wash. Nov. 30, 2015) ("An ALJ may not 'cherry pick' from the record to support a conclusion, but must account for the context of the record as a whole. . . . Impermissible cherry-picking is therefore an issue of evidentiary support: an ALJ may not simply cite isolated pieces of evidence as support for a conclusion, without taking into account the record as a whole."); *see generally Reddick*, 157 F.3d at 723 (finding that the ALJ's determination was not supported by substantial evidence in part because "the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports"). Plaintiff stopped working in August 2015 because her "pain was much too intense" to continue working, despite medication and multiple injections. AR 532. Dr. Dodge examined Plaintiff on November 10, 2015, approximately three months after she stopped working. AR 532. At that time, Dr. Dodge noted that Plaintiff's "[a]ctive voluntary range of motion of the cervical spine disclosed [that Plaintiff] was very guarded in neck motion." AR 532. At an examination on February 10, 2016, Plaintiff complained that her pain was dramatically worse, despite medication and rest. AR 816. Dr. Dodge's notes indicate that the issues identified in his November 2015 examination persisted, along with worsening symptoms. AR 816–17. Dr. Dodge noted that "[a]ny [extension] of the neck reproduces immediate pain down her left shoulder, arm, to the hand;" that Plaintiff appeared "to have some weakness of the left triceps and the left hand finger extensors;" and that medication was "becoming less and less effective." AR 817. An MRI from May 11, 2016 showed that plaintiff had developed some segmental breakdown and stenosis. AR 813.

In September 2016, Dr. Dodge noted that Plaintiff "has moderate pains through her neck with extension of pain into the shoulders," and that she had "tremendous amounts of

spasm." AR 807. Dr. Dodge stated that although trigger point injections had been successful in the past, he would not administer injections at that time because they raise Plaintiff's blood sugar. AR 807. In November 2016, Dr. Dodge prescribed a soft cervical collar to help rest and immobilize Plaintiff's neck. AR 805. In March 2017, Dr. Dodge determined that Plaintiff's "development of segmental stenosis is the cause for her radiculopathy," and recommended that Plaintiff use a Saunders home cervical traction device. AR 802. In June 2017, Plaintiff reported to Dr. Dodge that "her symptoms have worsened in her neck with some radiation of pain into the left shoulder and arm." AR 798. Dr. Dodge observed that Plaintiff held "her head and neck in an awkward position related to spasm." AR 798. Dr. Dodge did not note any improvement in further examinations of Plaintiff on October 12, 2017, and January 12, 2018. AR 795, 797.

Having reviewed the complete medical record, the Court finds that the ALJ's rejection of Dr. Dodge's opinion based on Plaintiff's ability to manage her pain through medication and injections was in error. The ALJ ignored significant portions of the medical record that show that although Plaintiff may have been able to manage her pain somewhat through narcotic medication and injections during the first half of 2015, her condition and pain became substantially worse after that. An ALJ's opinion that "fails to acknowledge key aspects of the record that support the disability claim" cannot constitute "specific and legitimate reasons for rejecting a treating physician's opinion that the claimant is disabled." *Samers v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 1005, 1008 (N.D. Cal. 2019).

### 3. Plaintiff's Daily Activities Do Not Contradict Dr. Dodge's Assessment of Her Work Limitations

A third conclusion stated by the ALJ to support his rejection of Dr. Dodge's opinion is that Plaintiff "retains the ability to perform a wide variety of daily activities." AR 25. The ALJ does not cite to specific evidence in the record to support this conclusion, although the Court can glean from other parts of the ALJ's decision the portions of the record that the ALJ likely relied on. AR 23 (citing Plaintiff's function report, AR 272–278, and her husband's third party function reports, AR 261–63, 312–13, as well as Plaintiff's

testimony). The ALJ summarized Plaintiff's testimony as follows:

> With regard to daily activities, she can drive a car, she can shop for groceries, she can prepare complete meals, she has no difficulties with her personal care, she walks her dogs, and she can do basic housework, such as cleaning and laundry.

AR 23. There is no evidence, however, that these activities are in any way comparable to working for a sustained period of time. Plaintiff testified that she has to take frequent breaks when performing household tasks like making dinner. AR 55. Tasks that used to take ten minutes now take about an hour to complete. AR 55. Plaintiff testified that she can only be on her feet for about half an hour before she needs to take a break. AR 56. She cannot sit for a prolonged period of time. AR 56. "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). The Court finds that the ALJ's rejection of Dr. Dodge's opinion based on Plaintiff's daily activities is not sustained by specific and legitimate reasons that are supported by substantial evidence in the record.

## V.   THE APPROPRIATE REMEDY

Having found that the ALJ's decision must be reversed, the next issue for determination is whether a remand for further proceedings, or a remand for payment of benefits, is appropriate. "The decision whether to remand for further proceedings or simply to award benefits is within the discretion of this court." *McAllister*, 888 F.2d at 603. "'If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate.'" *Id*. (brackets in original) (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)).

The decision whether to remand for further proceedings turns upon the likely utility of such proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). The court

"should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Crediting the evidence that was rejected, the ALJ should have formulated a correct RFC and concluded in step four that Plaintiff cannot perform her past relevant work. The vocational expert testified at the hearing that Plaintiff could work in the relevant positions if she could only reach overhead frequently. AR 61. The vocational expert testified that Plaintiff ***could not*** work in the relevant positions if she was limited to "occasional overhead reaching." AR 64. The vocational expert further testified that Plaintiff ***could not*** work in the relevant positions if she were "limited to a sedentary, unskilled functional capacity." AR 64. Dr. Dodge's opinion is that Plaintiff is "unable to work overhead." AR 829. Under the vocational expert's own testimony, that limitation would prohibit Plaintiff from pursuing work in the relevant positions.

The key issue, then, is whether there the Court should remand for further administrative proceedings as to step five, whether the Commissioner bears the burden of proving that Plaintiff can perform other work that exists in significant numbers in the national economy, taking into account Plaintiff's RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1560(c)(1)–(2); 20 C.F.R. § 404.1520(g)(1). Here, a review of the record demonstrates that this remaining issue has already been addressed by the testimony of Plaintiff and the vocational expert, rendering further proceedings unnecessary.

Plaintiff testified at the hearing that she is unable to work on tasks for a sustained amount of time without taking frequent breaks because of her pain and twitching in her arms. AR 55–56. She further testified that she would need to take a ten minute break at least every hour during her work shift. AR 56. The vocational expert's testimony confirms

that Plaintiff's inability to work for a sustained amount of time without taking a break would prohibit her from working not only in the relevant positions, but from employment generally:

> Q. [by ALJ]: So if a person were one day a week half the time off task on average you don't think that person could sustain these jobs *or any competitive employment*?
>
> A. [by vocational expert]: That's correct, Your Honor.

AR 63 (emphasis added).

"[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke*, 379 F.3d at 593; *see also Garrison*, 759 F.3d at 1023 (remand for benefits is appropriate where "a careful review of the record discloses no reason to seriously doubt" that the claimant is disabled). When Dr. Dodge's opinion is given appropriate weight, the vocational expert's testimony confirms that Plaintiff cannot perform work in her past relevant positions. The vocational expert's testimony also confirms that, because of Plaintiff's need to take frequent breaks, she cannot perform other work in the national economy. The record here is fully developed, and there is no need to further delay payment of benefits to Plaintiff. Remand for an award of benefits is appropriate.

## VI. CONCLUSION

The ALJ erred by rejecting the opinion of Dr. Dodge, Plaintiff's treating physician. The conclusory reasons stated by the ALJ do not meet the "specific and legitimate" standard, and are not supported by substantial evidence in the record. The appropriate remedy here, given the fully developed record, is to avoid any further unnecessary delay and remand for an award of benefits.

//
//
//

The Court therefore **REVERSES** the Commissioner's denial of disability insurance benefits and **REMANDS** to the ALJ for the calculation and award of benefits.

**IT IS SO ORDERED**.

Dated: July 16, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge